# No. 25-176

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

ELETSON HOLDINGS INC., *Debtor-Appellant*,

v.

PACH SHEMEN LLC, VR GLOBAL PARTNERS, L.P., ALPINE PARTNERS (BVI), L.P., GENE B. GOLDSTEIN, in his capacity as Trustee of the Gene B. Goldstein and Francine T. Goldstein Family Trust, MARK MILLET, in his capacity as Trustee of the Mark E. Millet Living Trust and in his capacity as Trustee of the Millet 2016 Irrevocable Trust, ROBERT LATTER, TRACY LEE GUSTAFSON, JASON CHAMNESS, RON PIKE, and FARRAGUT SQUARE GLOBAL MASTER FUND, L.P., *Appellees.*

_____

On Appeal from the United States District Court for the Southern District of New York (Liman, J.), No. 1:24-CV-8672

_____

**APPELLANT'S OPPOSITION TO MOTION TO STRIKE NOTICE OF APPEAL AND DISMISS THE APPEAL OR, ALTERNATIVELY, TO REMAND FOR DISMISSAL**

_____

Michael S. Lazaroff
RIMON P.C.
400 Madison Ave., Suite 11D
New York, NY 10017
Tel: (212) 969-3000
michael.lazaroff@rimonlaw.com

Louis M. Solomon
Colin A. Underwood
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Tel: (212) 549-0400
solomon@reedsmith.com

*Counsel for Appellant Eletson Holdings Inc.*

# TABLE OF CONTENTS

INTRODUCTION ................................................................. 1

BACKGROUND ................................................................. 4

ARGUMENT ..................................................................... 11

I.    THIS COURT HAS JURISDICTION TO REVIEW THE DISTRICT COURT'S CONFIRMATION APPEAL DISMISSAL ORDER ................................................... 12

II.   THE DISTRICT COURT'S STRIKING OF THE NOTICE OF APPEAL AND THE STIPULATION OF DISMISSAL HAVE NO EFFECT ON THIS COURT'S JURISDICTION AND DO NOT SUPPORT DISMISSAL OF THIS APPEAL ......................... 13

III.  THE DISTRICT COURT'S RULINGS ASSUME THE EFFECTIVENESS OF THE BANKRUPTCY PLAN AND THE LAWFULNESS OF THE CONFIRMATION ORDER— THE VERY ISSUES PRESENTED IN THIS APPEAL. ............... 18

CONCLUSION ................................................................. 26

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
  600 U.S. 412 (2023)........................................................................24, 26

*Camby v. Davis*,
  718 F.2d 198 (4th Cir. 1983)..........................................................15

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023)..........................................................................14

*Dickerson v. McClellan*,
  37 F.3d 251 (6th Cir. 1994)............................................................14

*In re Facebook, Inc.*,
  42 F. Supp. 3d 556 (S.D.N.Y. 2014)..............................................16

*Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  2004 U.S. Dist. LEXIS 9153 (S.D.N.Y. May 20, 2004).......................21

*Hogg v. United States*,
  411 F.2d 578 (6th Cir. 1969)..........................................................14

*LeChase Constr. Servs., LLC v. Argonaut Ins. Co.*,
  63 F.4th 160 (2d Cir. 2023)............................................................13

*Leonhard v. United States*,
  633 F.2d 599 (2d Cir. 1980) ...........................................................16

*Liles v. S. C. Dep't of Corr.*,
  414 F.2d 612 (4th Cir. 1969)..........................................................14

*Linde v. Arab Bank, PLC*,
  706 F.3d 92 (2d Cir. 2013) ............................................................22

*Litovich v. Bank of America Corp.*,
  2022 WL 16856436 (S.D.N.Y. Nov. 10, 2022)...................................17

*Maxwell Commun. Corp. PLC by Homan v. Societe Generale*
  *(In re Maxwell Commun. Corp. plc),*
  93 F.3d 1036 (2d Cir. 1996) ................................................................ 22

*Nike, Inc. v. Wu,*
  349 F. Supp. 3d 310 (S.D.N.Y. 2018) .................................................. 22

*Ret. Bd. of Policemen's Annuity & Ben. Fund of City of*
  *Chicago v. Bank of New York,*
  297 F.R.D. 218 (S.D.N.Y. 2013) ......................................................... 17

*Skukla v. Apple Inc.,*
  2022 U.S. Dist. LEXIS 319 (S.D.N.Y. Jan. 3, 2022) .......................... 15

*Sperow v. Melvin,*
  153 F.3d 780 (7th Cir. 1998) ............................................................... 14

*Sprint Comm'cns, Inc. v. Jacobs,*
  571 U.S. 69 (2013) ............................................................................... 12

*United States v. Demasi,*
  2025 U.S. App. LEXIS 5084 (6th Cir. 2025) ...................................... 20

*United States v. Salerno,*
  868 F.2d 524 (2d Cir. 1989) ................................................................ 16

## Statutes

11 U.S.C. § 1505 .................................................................................... 24

28 U.S.C. § 158(d)(1) ............................................................................ 12

# INTRODUCTION

Over just the past three weeks, entities represented by the Goulston & Storrs firm have filed numerous briefs and motions before this Court, each devoted to persuading the Court not to reach the merits of this appeal and its companion case, No. 25-445. Those pleadings assume the answers to the very question at issue in the appeals: whether the U.S. bankruptcy confirmation process for Eletson Holdings Inc. ("Holdings"), a company headquartered in Greece, was flawed and the confirmation order in question—which courts in Greece have not yet recognized—therefore should not have been issued by the Bankruptcy Court. No party should be permitted to insulate the District Court's and the Bankruptcy Court's orders from appellate review based on the supposition that the orders are correct. And a motion to dismiss is not the appropriate stage to resolve the merits—particularly where, as here, the issues are novel and the bankruptcy record is central to their resolution.

The facts here are complex but critical to understanding the dispute. Holdings, which is incorporated in Liberia and headquartered in Greece, was placed into an involuntary chapter 7 bankruptcy case in the U.S. upon the petition of a cadre of creditors (the "Petitioning Creditors").

The case was converted to chapter 11, and both the Petitioning Creditors and the debtor, Holdings, represented by Reed Smith, filed competing plans of reorganization. The former proposed to give ownership and control over Holdings to the Petitioning Creditors; the latter did not.

But the Petitioning Creditors recognized a difficulty: because Holdings is not a U.S. entity, it is not within the power of a U.S. court to alter Holdings' ownership or governance structure in Liberia or Greece. As a result, the Petitioning Creditors made a series of promises that, if their plan were confirmed, they would seek recognition of the confirmation order in the relevant foreign countries, and would not implement the plan until such recognition was obtained. Indeed, the Petitioning Creditors' plan contains express conditions barring it from becoming effective until such foreign approvals are obtained.

The Bankruptcy Court rejected Holdings' plan and issued an order confirming the Petitioning Creditors' plan. Holdings, at that point still represented by Reed Smith, filed a timely notice of appeal, asking the District Court to review the confirmation order. Mere days later, however, and without any attempt to obtain foreign recognition of the confirmation order as they had promised, the Petitioning Creditors purported

to waive all conditions to the effectiveness of their plan, including those requiring foreign approvals, and claimed they now controlled Holdings. Then, purporting to install Goulston as counsel for "reorganized" Holdings, they directed the filing of a stipulation to dismiss the appeal, claiming that it was their prerogative to do so. And now they seek the same outcome in this Court.

But that was an exercise in improper bootstrapping—and an unlawful one at that. The Petitioning Creditors never sought foreign recognition of the confirmation order, and thus their control over Holdings remains in doubt. Indeed, not only have the Greek courts to date refused to accord any recognition to "reorganized" Holdings or the new board appointed pursuant to the Petitioning Creditors' plan, but they have appointed a provisional board of directors to govern Holdings, which in turn has directed Reed Smith to file and prosecute this appeal.

Under the plan documents, fundamental principles of international comity, and the presumption against extraterritoriality, the reorganization plan should not have been approved, its effective date should not have occurred, and control of Holdings should still be held by those appointed by the Greek court. But none of this was taken into account in

the courts below and all of it bears directly on the merits of this appeal. The entities represented by Reed Smith, through the directors of Holdings appointed by a foreign court having appropriate jurisdiction over Holdings and its governance, are entitled to their day in court. Goulston's Motion to Dismiss seeks to deprive them of that. That attempted end run should be rejected and the Motion to Dismiss should be denied.

## BACKGROUND

On March 7, 2023, the Petitioning Creditors filed involuntary Chapter 7 bankruptcy petitions against several debtors, including Holdings (the "Debtor"), Eletson Finance (US) LLC, and Agathonissos Finance LLC. (Bankr. Dkt. 1). On September 6, 2023, Holdings stipulated to the conversion of the Chapter 7 cases to voluntary Chapter 11 cases. (Bankr. Dkt. 204).

From the start, the Petitioning Creditors well understood that two of the three debtors—including Holdings—were foreign entities, so restructuring proceedings would need to occur in both the U.S. and foreign jurisdictions. (Bankr. Dkt. 847 § VIII.A.3). Indeed, under Greek law, which adopts the United Nations Commission on International Trade

4

Law (UNCITRAL) Model Law on Cross-Border Insolvency, the Bankruptcy Plan for Holdings, whose Center of Main Interest is in Greece, must be recognized in Greece before it becomes effective. *See* UNCITRAL Model Law on Cross-Border Insolvency with Guide to Enactment and Interpretation, Art. 17, https://uncitral.un.org/sites/uncitral.un.org/files/media-documents/uncitral/en/insolvency-e.pdf; Bankr. Dkt. 1254 at 31:6-8 (recognizing the applicability of UNCITRAL.)

The need for such foreign recognition was explicitly reflected in the bankruptcy documents. The Petitioning Creditors' proposed plan made specific provision for compliance with foreign law and the need for later foreign recognition proceedings. (Bankr. Dkt. 1132 (the "Plan") § 5.2(b) (acknowledging satisfaction of "the applicable requirements of applicable law" was required to implement the Plan"); § 5.4 ("all . . . stock (*where permitted by applicable law*) . . . shall be cancelled.") (emphasis added); §§ V.5.1, V.5.9, IX.9.1, XI.11.2, XI.11.3 (similar)). Their binding Disclosure Statement likewise provided that the Petitioning Creditors would "make every effort to ensure that any Confirmation Order entered by the Bankruptcy Court and the steps taken pursuant to the Confirmation Or-

5

der to implement the Plan are recognized and are effective *in all applicable jurisdictions*," and acknowledged the risk that "a foreign court may refuse to recognize the effect of the Confirmation Order" (Bankr. Dkt. 847 § VIII.A.3 (emphasis added)).

On October 25, 2024, the Bankruptcy Court confirmed the Petitioning Creditors' Plan (Bankr. Dkt. 1212) (the "Confirmation Order"), which provided for reorganizing Holdings. In its Order, the Bankruptcy Court acknowledged the existence of "applicable laws" with which it had to abide—including "the laws, rules or regulations of any state or U.S. *or foreign governmental authority* with respect to the implementation or consummation of the Plan and any act that may be necessary or appropriate for the implementation or consummation of the Plan." (Bankr. Dkt. 1223 ¶ 5(iv) (emphasis added)).

On November 7, 2024, Reed Smith filed on behalf of Holdings a notice of appeal from the Confirmation Order. (Bankr. Dkt. 1233). Five days later, in response to the resignation of four of Holdings' board members, which left it without a quorum, minority shareholders of Holdings applied to the Court of First Instance in Piraeus, Greece to appoint provi-

sional management for the company. (D.Ct. Dkt. 44 ¶ 12). That court appointed a provisional board of eight members for Holdings with a mandate to take care of the urgent business of the company. It also granted the provisional board authority to appoint lawyers to protect the company's interests, including by appealing the Bankruptcy Court's Confirmation Order. (*Id.*). (For the sake of clarity only, we sometimes refer hereafter to Holdings, as directed by the Greek-appointed provisional board, as Holdings (Greece).) Just last week, in an adversary proceeding, the Piraeus court issued an order extending its order appointing the provisional board for Holdings pending further order of that court. (Bankr. Dkt. 1590 Ex. A ¶¶ 6, 7).

Meanwhile, in another adversary proceeding, a three-judge panel of the Court of First Instance in Athens recognized that the provisional board of Holdings appointed by the Piraeus court continues to control the company. (D.Ct. Dkt. 54 ¶ 12; D.Ct. Dkt. 54-1). That court also held that the reorganized Holdings that Goulston claims to represent in this appeal (which we sometimes refer to hereafter as "Reorganized Holdings") does *not* have any authority to manage the company. (*Id.*).

7

After Rimon and Reed Smith's filing of the notice of appeal from the Bankruptcy Court's Confirmation Order, Goulston attorneys entered appearances in the District Court, asserting that they represented Reorganized Holdings, and filed a "stipulation" to dismiss that appeal. (D.Ct. Dkt. 9). Goulston argued that the Plan already had been consummated—in violation of its terms and without any foreign recognition or consideration of international comity principles—and that Reorganized Holdings wished to discontinue the appeal. Without permitting any submissions from Reed Smith on behalf of Holdings (Greece), the District Court agreed and, on December 30, 2024, ordered that the appeal would be dismissed based on the stipulation (the "Confirmation Appeal Dismissal Order"). (D.Ct. Dkt. 19, 20). The District Court did not address the merits of the appeal from the Confirmation Order.

On January 16, Rimon and Reed Smith filed on behalf of Holdings (Greece) a notice of appeal in the District Court from the Confirmation Appeal Dismissal Order. (D.Ct. Dkt. 24). After Goulston, on behalf of Reorganized Holdings, moved to strike that notice (D.Ct. Dkt. 27) and filed a new stipulation of voluntary dismissal of the appeal pursuant to Federal Rule of Appellate Procedure 42(a) (D.Ct. Dkt. 31), the District Court

8

stated it "will consider the stipulation of dismissal in conjunction with the pending motion to strike." (D.Ct. Dkt. 33).

On January 23, after the appeal to this Court was docketed (C.A. Dkt. 8), this Court issued an Order staying the appeal on the ground that "[t]he district judge has indicated that he 'will consider' both the underlying stipulation of dismissal that is challenged in the notice of appeal and the pending motion to strike." (C.A. Dkt. 10.1). The order further directed Rimon, Reed Smith, and Goulston to advise the Court by letter "regarding the status of the appeal" once the District Court acted. (*Id.*).

On February 14—weeks after Holdings (Greece)'s appeal was docketed in this Court—the District Court granted the motion to strike it. (D.Ct. Dkt. 66). The court acknowledged that a "provisional board" for Holdings was "appointed by a Greek court on November 12, 2024" (C.A. Dkt. 12.1, Ex. B at 91:19–21) and that the board was "authorized, among other things, to appoint attorneys to act on behalf of Eletson Holdings to challenge the confirmation order of the bankruptcy court." (*Id.* at 100:1–5). But it declined to hold the Petitioning Creditors to their promises to "make every effort to ensure" that the Plan and Confirmation Order "are

9

recognized and are effective in all applicable jurisdictions[,]" apply international comity principles, or consider the effect of the Greek court rulings. (D.Ct. Dkt. 44 ¶¶ 8–16; D.Ct. Dkt. 45 ¶¶ 5–7). In addition to granting the motion to strike, the District Court issued an alternative "indicative ruling under Federal Rule of Civil Procedure 62.1(a) and Federal Rule of Appellate Procedure 12.1 to the effect that the notice of appeal at Dkt. No. 24 should be stricken and the appeal should be dismissed." (D.Ct. Dkt. 66).

As directed by this Court, the parties then filed letters with the Court to advise on the status of the appeal. (C.A. Dkt. 12, 14). Goulston, on behalf of Reorganized Holdings, claimed that the appeal should be dismissed. (C.A. Dkt. 12, 15). Rimon and Reed Smith, on behalf of Holdings (Greece), submitted that the appeal should proceed on a merits briefing schedule. (C.A. Dkt. 14). Thereafter, on March 3, the Court issued an order directing this appeal and the related appeal at No. 25-445 to be heard in tandem. (C.A. Dkt. 16).

## ARGUMENT

This Court indisputably has jurisdiction to review the District Court's final order dismissing Holdings' appeal of the Bankruptcy Court's Confirmation Order. That jurisdiction is unaffected by the District Court's ruling purporting to strike Holdings (Greece)'s notice of appeal, or its indicative ruling that the appeal should be dismissed pursuant to a stipulation of dismissal filed belatedly in the District Court after the docketing of this appeal. It is for this Court—and this Court alone—independently to determine its jurisdiction. It has jurisdiction here, and the District Court has no power to preempt or extinguish it so as to insulate its rulings—and the Bankruptcy Court's—from appellate review.

As for who controls Holdings and is authorized to act for it, that turns on the effectiveness of the Confirmation Order and Bankruptcy Plan themselves—which is what Holdings (Greece), represented by Rimon and Reed Smith, contested below and will challenge on the merits in this Court, but which the District Court declined to address. By its self-described "Motion to Dismiss," Goulston asks this Court to assume the Order and Plan are effective, without ever considering the merits of

11

the factual and legal reasons why they are not. That is an improper attempt to prevent a proper presentation and analysis of the merits of this appeal, and the Court should reject it out of hand.

## I. THIS COURT HAS JURISDICTION TO REVIEW THE DISTRICT COURT'S CONFIRMATION APPEAL DISMISSAL ORDER.

This Court has jurisdiction over final orders arising out of a bankruptcy. *See* 28 U.S.C. § 158(d)(1). The District Court's Confirmation Appeal Dismissal Order, which dismissed Holdings' appeal from the Bankruptcy Court's final Confirmation Order, is a "final order" under § 158(d)(1). Goulston's Motion does not contend otherwise, and this Court has an obligation to review that final decision. *See Sprint Comm'cns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (emphasizing that "[f]ederal courts have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.' . . . Jurisdiction existing, . . . a federal court's 'obligation' to hear and decide a case is 'virtually unflagging'" (citations omitted)).

II. **THE DISTRICT COURT'S STRIKING OF THE NOTICE OF APPEAL AND THE STIPULATION OF DISMISSAL HAVE NO EFFECT ON THIS COURT'S JURISDICTION AND DO NOT SUPPORT DISMISSAL OF THIS APPEAL.**

Goulston's Motion argues that Holdings (Greece)'s appeal of the District Court's Confirmation Appeal Dismissal Order should be dismissed because the District Court ruled that it should be. This intrudes on this Court's prerogative to determine its own jurisdiction and improperly seeks a premature ruling on the merits of this appeal before briefing and argument.

There is no dispute that this Court has jurisdiction to determine its own jurisdiction, and its consideration of that issue is plenary. *See LeChase Constr. Servs., LLC v. Argonaut Ins. Co.*, 63 F.4th 160, 171 (2d Cir. 2023) (this Court "'always has jurisdiction to determine its own jurisdiction'") (citation omitted). What a District Court thinks about this Court's jurisdiction, or who has authority to take and dismiss an appeal, matters only to the extent this Court finds it persuasive. As explained below (in Point III), the District Court's ruling here is not persuasive—indeed, it is wrong.

The District Court had no jurisdiction to strike Holdings' appeal, and its indicative ruling adds nothing to the equation. Once Rimon and

Reed Smith filed a notice of appeal on behalf of Holdings (Greece) from the Confirmation Appeal Dismissal Order, that "'confer[red] jurisdiction on the court of appeals and divest[ed] the district court of control over those aspects of the case involved in the appeal.'" *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (citation omitted). Moreover, "[a]ny objection as to the authorization for the filing of the notice of appeal raises a question addressed to this Court's appellate jurisdiction and is not within the jurisdiction of the District Court." *Hogg v. United States*, 411 F.2d 578, 580 (6th Cir. 1969); *Liles v. S. C. Dep't of Corr.*, 414 F.2d 612, 614 (4th Cir. 1969) (per curiam) ("Neither by the statutes of the United States nor the Federal Rules of Appellate Procedure is the district court given the power to deny review by this court of a case in which an appeal as of right is assured.").

Under these authorities, the District Court had no jurisdiction to strike Holdings (Greece)'s already-docketed appeal in this Court. *See, e.g.*, *Sperow v. Melvin*, 153 F.3d 780, 781 (7th Cir. 1998) ("A district court cannot dismiss an appeal."); *Dickerson v. McClellan*, 37 F.3d 251, 252 (6th Cir. 1994) (district court "exceeded its authority" by dismissing appeal on grounds that it was "frivolous" as "[t]his court must determine its

14

own jurisdiction and is bound to do so in every instance"); *Camby v. Davis*, 718 F.2d 198, 200 n.2 (4th Cir. 1983) ("The district court entered an order dismissing the notice of appeal. This it was without jurisdiction to do."); *Skukla v. Apple Inc.*, 2022 U.S. Dist. LEXIS 319, *1–2 (S.D.N.Y. Jan. 3, 2022) ("[Defendant] has not cited any authority indicating that a district court has jurisdiction to dismiss or strike an untimely or otherwise defective notice of appeal, nor has the Court been able to locate any").

These authorities—and the black-letter principles they espouse—were discussed in Rimon and Reed Smith's February 28, 2025, letter submitted to this Court. (C.A. Dkt. 14.1.). Goulston's Motion ignores them entirely. Instead, it incorrectly maintains that a District Court has jurisdiction to strike a deficient notice of appeal. We are not aware of any case where this Court has ceded to a district court the jurisdiction to decide whether this Court has jurisdiction over an appeal. And Goulston cites none.

Goulston's cited cases are misdirection. They involve appeals from non-final orders, where the District Court was permitted to continue with the case, but even then, it was *this Court* that decided whether to dismiss

15

the appeal. *See, e.g., United States v. Salerno*, 868 F.2d 524, 539 (2d Cir. 1989) (interlocutory appeal in criminal case permitting district court to proceed with trial while Second Circuit considered and dismissed appeal); *Leonhard v. United States*, 633 F.2d 599, 610-611 (2d Cir. 1980) ("district court retained power to correct the judgment" while appeal proceeded in Second Circuit). In one of Goulston's lead cases, *United States v. Rodgers*, this Court allowed the District Court to proceed with resentencing because the notice of appeal was "premature," and from an order that was "patently *nonappealable*," and this Court dismissed the appeal. 101 F.3d 247, 251 (2d Cir. 1996); *In re Facebook, Inc.*, 42 F. Supp. 3d 556, 561 (S.D.N.Y. 2014) (declining to apply *Rodgers* where order was appealable). Here, there is no dispute that the Confirmation Appeal Dismissal Order is a final and appealable order.

The District Court's purported "'inherent authority to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances[,]'" (C.A. Dkt. 27.1 at 8), as Goulston describes it, does not include the power to defeat this Court's jurisdiction. Otherwise, a District Court would be authorized to insulate its rulings from this Court's review, turning the appellate process on its head. District Courts

16

may have authority to strike certain pleadings for various reasons. But their exercise of that authority does not, and cannot, affect this Court's jurisdiction to review a timely appealed final ruling.

As for the District Court's indicative ruling, it simply reiterates the rationale offered by the District Court for striking the notice of appeal—which, again, is the same rationale underlying the Order that Holdings has appealed. And indicative rulings are not appropriate for addressing the very question on appeal. *See, e.g.*, *Ret. Bd. of Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of New York*, 297 F.R.D. 218, 221 (S.D.N.Y. 2013) (improper to ask a district court to issue an indicative ruling reconsidering the same question being reviewed by the court of appeals); *Litovich v. Bank of America Corp.*, 2022 WL 16856436, at *2 (S.D.N.Y. Nov. 10, 2022) ("Such a ruling is not appropriate, however, when it requires the district court to consider the exact issue that is pending on appeal.").

Goulston's final gambit, one it attempted (belatedly) in the District Court, is to attach, as an exhibit to its Motion, another purported stipulation of voluntary dismissal of this appeal, which it incorrectly claims is

17

executed on behalf of all parties to the appeal. But that is just a repack-aging of Goulston's arguments, which assume its preferred resolution of this appeal's merits. This Court should not be deceived.

## III. THE DISTRICT COURT'S RULINGS ASSUME THE EFFEC-TIVENESS OF THE BANKRUPTCY PLAN AND THE LAW-FULNESS OF THE CONFIRMATION ORDER—THE VERY ISSUES PRESENTED IN THIS APPEAL.

In its Motion, Goulston asks this Court to do what the District Court did: assume that the Plan is effective, the Confirmation Order is lawful, binding promises to obtain foreign recognition can be disregarded, such recognition is unnecessary, final consummation of the Plan occurred despite valid Greek court orders to the contrary, and Reorganized Hold-ings thus had authority to dismiss this appeal. Open and shut, Goulston claims.

But the propriety and effectiveness of the Plan and the authority of Reorganized Holdings' board to dismiss Holdings (Greece)'s appeal are precisely what is before this Court to decide on the merits, and there are compelling grounds for rejecting the District Court's reasoning and Goul-ston's effort to try to close the courthouse doors. A motion to dismiss is not the way to resolve merits issues—the ordinary appellate process is.

Starting with the true basis for Goulston's Motion, as noted, the District Court dismissed Holdings' appeal from the Confirmation Order—and then struck Holdings (Greece)'s appeal to this Court from that dismissal—because the court believed (erroneously) that: (i) the Bankruptcy Plan had become effective despite the absence of any attempt to seek recognition of it in Greece, let alone obtain it; and, as a result, (ii) the new board of directors for the purported Reorganized Holdings wished to discontinue the appeal—even though Greek courts rejected that new board's authority and instead appointed a provisional board to govern Holdings, which in turn authorized this appeal.

This reasoning assumes the effectiveness and lawfulness of the Plan and the Confirmation Order despite the Petitioning Creditors' violation of their binding promises, without recognition in Greece, and in the face of contrary orders from Greek courts. And it is precisely what is before this Court now. Accordingly, the Court should evaluate it on its merits after full briefing and argument, just as it would in any other case.

Accepting Goulston's invitation, on the other hand, would enable the District Court entirely to insulate from this Court's review both the Bankruptcy Court rulings (which were never reviewed on their merits by

the District Court), as well as those of the District Court itself. This effort to short-circuit the ordinary appellate process through a motion to dismiss is improper, and this Court should reject it. *See United States v. Demasi*, 2025 U.S. App. LEXIS 5084, *2 (6th Cir. 2025) (declining to rule on motion to dismiss because it was based on argument "inextricably intertwined with the merits of [the] appeal").

Goulston's attempt to preempt the appellate process is particularly inappropriate given the serious errors in the District Court's reasoning—and in the Plan and Confirmation Orders themselves. This case presents the novel circumstance of a bankruptcy plan for a foreign entity confirmed, non-consensually, in a U.S. bankruptcy case, and claims that the plan has gone effective despite its proponents' failures to abide by the promises they made to obtain recognition of that plan in the debtor's center of main interests in a foreign nation. At the very least, these are reasons for serious scrutiny of the merits of this appeal—not a decision-by-assumption based on a cursory pleading disguised as a "Motion to Dismiss."

20

The District Court's Order ignored the record and departed from controlling law. It first overlooked the Petitioning Creditors' abandonment of their express Disclosure-Statement promises to seek recognition of the Plan in Liberia and Greece—and not to implement the Plan until they did so. *See, e.g., Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 2004 U.S. Dist. LEXIS 9153, at *19-21 (S.D.N.Y. May 20, 2004) (rejecting the position "that disclosure statements are without binding effect").

There is more. As noted, the Plan contained express conditions on its consummation and effectiveness that required the Petitioning Creditors to obtain foreign recognition. *Supra* at 5. The Petitioning Creditors claim they waived those conditions. But whether it was possible for them to waive the expressed need to obtain foreign recognition proceedings is itself subject to dispute—indeed, it contravenes the Plan's plain terms. (*See*, *e.g.*, Plan, Art. 9.2 (permitting waiver of conditions precedent to effective date "*other than proceedings to . . . consummate this Plan*") (emphasis added)).

Even if the Plan and Confirmation Order could be read to permit the Plan to go effective without foreign approval, reversible error remains

21

because the lower courts violated principles of international comity by failing to accord any weight or respect to Greece and the relevant rulings of the Greek courts. International comity requires a particularized analysis of the respective interests of the foreign nation and the requesting nation[,]" *Linde v. Arab Bank, PLC*, 706 F.3d 92, 111 (2d Cir. 2013), which "weigh[s] all of the relevant interests of all of the nations affected by the court's decision." *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 335 (S.D.N.Y. 2018). As Congress and this Court each have recognized, the need for comity is especially critical "in transnational insolvency situations" like this one. *Maxwell Commun. Corp. PLC by Homan v. Societe Generale (In re Maxwell Commun. Corp. plc)*, 93 F.3d 1036, 1048 (2d Cir. 1996) (citations omitted).

Here, the UNCITRAL Model Law, which has been adopted by both the U.S. and Greece, provides that Greece, Holdings' Center of Main Interest, has a central role to play in the restructuring of Holdings, and forbids recognizing a bankruptcy stemming from manifest bad faith. And Greece has not recognized that restructuring. In fact, a Greek court has ruled affirmatively that Holdings continues to be owned and managed by the individuals who have retained Rimon and Reed Smith to act for it as

counsel. (D.Ct. Dkt. 54 ¶ 12; D.Ct. Dkt. 54-1). That court also held that the entity that Goulston claims to represent in this proceeding, Reorganized Holdings, does *not* have any authority. (*Id.*). And on April 1, 2025, in an adversary proceeding, a court in Piraeus, Greece issued an order extending its previous order appointing Holdings' provisional board pending further order of that court. *Supra* at 7.

The District Court acknowledged these rulings but dismissed them as irrelevant *in the U.S.* because, it said, the Plan alone dictates who Holdings is, who controls it *in the U.S.*, and who can represent it *in U.S. courts*. As the court repeatedly, and bluntly, put it, all that mattered was U.S. law. (2/14/25 Tr. at 27:12–23, 28:3–11, 99:4–12, 100:18–101:15, 102:11–23, 103:2–13, 103:14–104:1, 105:4–10). That is not comity. In fact, it is the opposite. Most prominently, the District Court gives zero weight to Greece's interests or the effect of the Greek court orders—even though recognition in Greece is essential to the Plan's effectiveness in the very country where Holdings is headquartered.

The District Court's error runs even deeper. Like the Bankruptcy Court, it ignored the clear bad faith in the Petitioning Creditors' actions resulting in Holdings' bankruptcy in the first place, which an arbitrator

in a related dispute involving Holdings explicitly found, and which the District Court has not disturbed. (Bankr. Dkt. 483-1 ("Final Award") at 61-62). But that sort of bad faith provides a recognized basis for Greek courts *not* to recognize the Bankruptcy Plan here. *See* UNCITRAL Model Law on Cross-Border Insolvency with Guide to Enactment and Interpretation, Art. 6.

Still further, the Plan and Confirmation Order raise significant issues of extraterritoriality. To the extent the Plan and Confirmation Order purport to override the need to obtain Greek court recognition to restructure a Greek company, they impermissibly project the Bankruptcy Code's restructuring provisions extraterritorially. *See Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 417 (2023) (noting presumption against extraterritorial application of U.S. statutes). Moreover, the Bankruptcy Court specifically directed that the foreign representative of Holdings could "act in any way . . . in any country[,]" period. (Bankr. Dkt. 1512 at 2). But the Bankruptcy Code expressly provides that U.S. courts may only authorize an entity "to act in a foreign country on behalf of an estate . . . in any way *permitted by the applicable foreign law*"—not in conflict with it. 11 U.S.C. § 1505 (emphasis added).

The courts below went so far as to enjoin Holdings (Greece), as directed by the Greek-appointed board, the board itself, and Holdings' former minority and majority shareholders, from asserting statutorily granted rights *in Greece under Greek law* if, in the opinion of the courts below, it might have the effect of "undermin[ing] in any way the judicial recognition of the [US] Confirmation Order . . . ." (Bankr. Dkt. 1537; Bankr. Dkt. 1512). The courts below then imposed sanctions on those parties for doing so (Bankr. Dkt. 1537), even though (i) participating in foreign bankruptcy proceedings is expressly contemplated by the Bankruptcy Code, *see* 11 U.S.C. § 1505, and (ii) as explained by the only expert on Greek law and procedure to submit evidence below, the lower court rulings require Holdings (Greece) and its board to violate Greek law in order to comply with U.S. law. (*See* D.Ct. Dkt. 44 ¶¶ 13-17 ("delivery of Holdings and all its subsidiaries to the Petitioning Creditors in accordance with the Confirmation Order and Plan without judicial recognition in Greece of the Confirmation Order and Plan would violate Greek law and would expose" Holdings, its directors and officers, and others to civil and criminal liabilities)).

25

U.S. courts, and U.S. law, do "not rule the world." *Abitron Austria*, 600 U.S. at 428 (citation omitted). But the lower courts here have acted— and ruled—as if they do, and they are causing grave harm well beyond this case. The serious issues presented on appeal require an analysis of the controlling law, the Bankruptcy Plan documents, and the record of the bankruptcy itself in a novel context. They cannot adequately be presented—or decided—at this preliminary stage on truncated motion-to-dismiss briefing. The Court should therefore hear from the parties on the merits and reject Goulston's premature effort to avoid this Court's review.

## CONCLUSION

The Court should deny the Motion to Dismiss this appeal and decline to enter the stipulation to dismiss the appeal attached to it.

Dated: April 10, 2025          Respectfully submitted,

*/s/ Michael S. Lazaroff*       */s/ Louis M. Solomon*

Michael S. Lazaroff          Louis M. Solomon
RIMON P.C.          Colin A. Underwood
400 Madison Ave., Suite 11D     REED SMITH LLP
New York, NY 10017       599 Lexington Avenue
Tel: (212) 969-3000       New York NY 10022
Michael.lazarof@rimonlaw.com    Tel: (212) 549-0400
                  lsolomon@reedsmith.com

*Counsel for Appellant Eletson Holdings Inc.*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this Opposition complies with the type-volume limit of Federal Rules of Appellate Procedure 27(d)(2) because, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f), this Opposition contains 5,054 words as counted by the word-processing software used to create the Opposition.

I further certify that this Opposition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Century Schoolbook 14-point font.

Dated: April 10, 2025

*/s/ Louis M. Solomon*
Louis M. Solomon
*Counsel for Eletson Holdings Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Opposition to be filed electronically with the Clerk of the Court for the U.S. Court of Appeals for the Second Circuit by using the ACMS system. All participants are registered e-filing users and will be served by the e-filing system.

Dated:  April 10, 2025

/s/ *Louis M. Solomon*
Louis M. Solomon
*Counsel for Eletson Holdings Inc.*